[No. A098403. First Dist., Div. Three. Aug. 29, 2003.]

In re the Marriage of STEVEN J. and LINDA SUE DELANEY.
STEVEN J. DELANEY, Respondent, v.
LINDA SUE DELANEY, Appellant.

COUNSEL

Stephen Kent Rose for Appellant.

James I. Cohen for Respondent.

OPINION

McGUINESS, P. J.—Linda Sue Delaney (Wife) appeals from a final judgment of dissolution. ■ She contends the trial court erred in determining that she used undue influence in an interspousal transaction to secure a joint tenancy in the separate property interest of respondent Steven J. Delaney (Husband) in residential real property (the Property). Wife asks that the matter be remanded and that Husband be required to prove his claim to the Property by clear and convincing evidence. We conclude the trial court properly applied the presumption of undue influence that arises from the statutory fiduciary relationship between spouses, and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The Property at issue in this case is located at 77 Mountain View Avenue in San Anselmo. It was purchased by Husband in or around 1982, using money originally loaned to him by his grandfather. Husband and Wife first met in or around July 1989. They began living together in Husband's home on the Property in the spring or summer of 1990. At the time, Husband owned the Property free and clear of any encumbrances except a deed of trust

in favor of his grandfather. When Husband's grandfather died in June 1995, that debt was forgiven in his will.

Wife had worked in law offices as a secretary and legal assistant; as such, she had specialized in probate work. In a prior dissolution, Wife had been awarded a one-half community interest in real property as a result of a joint interest in property she had earlier obtained from her former spouse in connection with a loan on that property. Husband testified he had been diagnosed with a learning disability that severely limited his reading comprehension. He relied on Wife to handle all legal and financial matters for the couple.

The parties' first child was born in March 1991. After cohabiting for approximately five years, the parties married in September 1995. Around that time, Wife became pregnant again. In anticipation of the birth of their second child, the parties decided to add a nursery room to the Property. They obtained a $25,000 bank loan, secured by the value of the Property, in order to finance the remodeling construction. In July 1996, and in connection with the loan application process, Husband executed a grant deed conveying the Property—which at the time was entirely his separate property—to Wife and Husband as joint tenants. The grant deed was recorded on August 6, 1996. Husband testified that he did not realize he was giving half of his Property to Wife in order to obtain the bank loan until he noticed that both of their names appeared on a property tax bill.

The parties' second child was born in August 1996. They continued to reside together at the Property until April 1999. On April 29, 1999, Husband filed a petition for dissolution of marriage. After several failed attempts at reconciliation, the parties separated permanently on December 5, 1999.

The trial court bifurcated the issues to be resolved. Over a two-day period (Dec. 11, 2000, and Jan. 23, 2001), it took evidence on the single issue of the validity of the grant deed conveying the Property from Husband to Wife and Husband as joint tenants. In its statement of decision filed on March 22, 2001, the trial court determined that: (a) Wife had not given sufficient consideration for the transfer of Husband's Property to joint tenancy; (b) as a fiduciary, she bore the burden of establishing that the joint tenancy grant deed was not the product of undue influence; (c) she had failed to sustain her burden in this regard; and (d) the grant deed was therefore void. The trial court ordered set aside the grant deed transferring title to the Property to the parties in joint tenancy.

Pursuant to its judgment voiding and setting aside the grant deed, on July 5, 2001, the trial court ordered Wife to sign a quitclaim deed to the Property

in favor of Husband, and to vacate the residence by August 15, 2001. After Wife failed to vacate the premises and sought the protection of the bankruptcy court in August 2001, Husband obtained relief from the automatic stay and sought an order evicting Wife from the Property. Ultimately, on October 16, 2001, the trial court issued an ex parte order requiring the sheriff to remove Wife from the Property. On January 28, 2002, bifurcated trial was held on the reserved issues of spousal support and attorney fees, and the marriage was ordered dissolved.

Final judgment of dissolution was entered on February 5, 2002. In this appeal from the final judgment of dissolution, appellant seeks review of the bifurcated judgment setting aside the joint tenancy grant deed of the Property from Husband to Wife and Husband as joint tenants, as well as the subsequent orders requiring Wife to sign a quit claim deed of her interest in the Property, requiring her to vacate the residence by October 15, 2001, and ordering the sheriff to remove her from the Property.

## DISCUSSION

Appellant Wife contends that the trial court erred by placing on her the burden of proving that the transfer of Husband's separate ownership of the subject Property to joint tenancy was not the product of undue influence. Instead, she argues, the trial court should have required Husband to rebut by clear and convincing evidence the presumption under Evidence Code section 662 that record title to the Property was held by the parties in joint tenancy; or else have required him to rebut, by documentary evidence of a written agreement or deed of title, the presumption set out in Family Code section 2581[1] that the Property was community property because it was acquired by the parties during marriage in joint tenancy. Appellant is wrong on both counts.

This case concerns a conflict between legal presumptions. In imposing on Wife the burden of establishing that she did not obtain a joint interest in the Property by means of undue influence, the trial court relied on section 721, as that provision has been interpreted by the appellate courts.[2] Section 721 states that "in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions

---

[1] For ease of reference, unless otherwise indicated all further unspecified statutory references are to the Family Code.

[2] In its statement of decision, the trial court referred to section 761. That provision concerns the community property status of certain transfers in trust. A review of the decision in the context of the factual circumstances, the issues before the court, and the parties' arguments makes it clear that the trial court meant to refer to section 721, and the reference to section 761 was a clerical error.

of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners ...."[3]

This provision establishes that with respect to property transactions, married couples are subject to the same standards of disclosure toward each other applicable to any confidential fiduciary relationship. As a consequence, when any interspousal transaction advantages one spouse to the disadvantage of the other, the presumption arises that such transaction was the result of undue influence. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 287, 293–294, 301–302 [39 Cal.Rptr.2d 673] (*Haines*) ["[u]nder California community property law, because spouses occupy confidential relations with each other, when an interspousal transaction advantages one spouse over the other, a presumption of undue influence arises"]; see also *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 27 [99 Cal.Rptr.2d 252, 5 P.3d 815] (*Bonds*) ["persons, once they are married, are in a fiduciary relationship to one another (Fam. Code, § 721, subd. (b)), so that whenever the parties enter into an agreement in which one party gains an advantage, the advantaged party bears the burden of demonstrating that the agreement was not obtained through undue influence"].)

Rather than applying this presumption derived from section 721, appellant Wife contends the trial court should have applied the two presumptions derived from Evidence Code section 662 and section 2581, respectively: first, the presumption in favor of the owner of record title to property and its concomitant requirement of clear and convincing evidence to rebut that

---

[3] Section 721 provides in pertinent part as follows: "(a) Subject to subdivision (b), either husband or wife may enter into any transaction with the other, or with any other person, respecting property, which either might if unmarried.

"(b) [I]n transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, ... including, but not limited to, the following: [¶] (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying. [¶] (2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property .... [¶] (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property."

presumption (Evid. Code, § 662);[4] and second, the presumption that property acquired during marriage in joint form, including property held in joint tenancy, is community property unless otherwise agreed in writing (§ 2581).[5] We disagree.

This appeal is controlled by *Haines*. ■ In that case, the Court of Appeal specifically addressed the kind of situation presented here, in which the presumption favoring stability of title found in Evidence Code section 662 is in direct conflict with the presumption of undue influence arising where one spouse obtains an advantage over the other in an interspousal property transaction. The court concluded that in every such instance, the presumption based on the confidential fiduciary relationship between spouses must prevail over the presumption based on record title. The *Haines* court based its holding on the unique protected status of marriage, and the fact that applying the presumption of Evidence Code section 662, with its higher evidentiary standard, would in every case inevitably defeat the spousal protection intended by the Legislature in enacting section 721. (*Haines, supra,* 33 Cal.App.4th at pp. 286–294, 301.) ■ In addition, the court cited the principle that where two presumptions are in conflict, the more specific presumption applicable in particular cases must control over the more general presumption arising under ordinary circumstances. (*Id.* at p. 301, citing *Rader v. Thrasher* (1962) 57 Cal.2d 244, 252 [18 Cal.Rptr. 736, 368 P.2d 360]; *McKay v. McKay* (1921) 184 Cal. 742, 746–747 [195 P. 385].)[6]

---

[4] Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only be clear and convincing proof."

[5] Section 2581 provides in pertinent part: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

[6] "Statutorily, spouses have the right to enter into transactions with each other as well as other persons. (Former Civ. Code, § 5103, subd. (a) [Fam. Code, § 721, subd. (a)].) However, that same statute also states that interspousal transactions must comport with the rules controlling the actions of persons occupying confidential relations with each other. (Former Civ. Code, § 5103, subd. (b) [Fam. Code, § 721, subd. (b)].) Thus, the competence of spouses to engage in transactions with each other is subject to the circumstances being pleasing to the fiduciary standard. [Citations.]

"When an interspousal transaction advantages one spouse, '[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence.' [Citation.] 'Courts of equity … view gifts and contracts which are made or take place between parties occupying confidential relations with a jealous eye.' [Citation.]

"Because transmutations must conform to the legal standard codified in former Civil Code section 5103, subdivision (b) (Fam. Code, § 721, subd. (b)), where the transmutation is

The reasoning of *Haines* is clearly applicable here. In cases such as this, involving interspousal property transactions, the "irreconcilable conflict" between the two presumptions established by section 721 and Evidence Code section 662 has been resolved in favor of section 721, based on the intent of the Legislature in enacting fiduciary protections for interspousal transactions and general rules of statutory construction. (*Haines, supra,* 33 Cal.App.4th at pp. 296–302; see also *Bonds, supra,* 24 Cal.4th at pp. 27–28.)

The *Haines* rationale applies equally to any conflict between section 721 and the presumption under section 2581 that property acquired as joint tenancy by a married couple is community property. In the first place, section 2581 by its terms expressly applies to property "acquired by the parties during marriage in joint form." The *acquisition* of property during marriage by purchase or gift is clearly different from an interspousal transmutation of property *already* owned by one or both spouses. (*Haines, supra,* 33 Cal.App.4th at p. 293 [a transmutation is "an interspousal transaction or agreement which works a change in the character of the property"].)

Moreover, even if we were to construe section 2581 as applicable to interspousal transmutations, the presumption set out in that section would be as much in direct conflict with the presumption established by section 721 as was Evidence Code section 662, in both *Haines* and this case. To apply section 2581 to transmutations in preference to section 721 would effectively abrogate the protections given to married persons by section 721. (*Haines,*

evidenced by a deed as is the case here, the presumption of undue influence arising from advantage necessarily conflicts with the common law presumption of title, codified in [Evidence Code] section 662." (*Haines, supra,* 33 Cal.App.4th at pp. 293–294.)

"Where one spouse has taken advantage of another in an interspousal transaction, a presumption of undue influence arises under former Civil Code section 5103, subdivision (b) (Fam. Code, § 721, subd. (b)). However, this presumption, which the law provides to protect married persons, cannot come into play if section 662 is applied because of the higher evidentiary standard of section 662. Therefore, application of section 662 in such situations can significantly weaken protections the Legislature intended to provide for spouses who are taken advantage of in interspousal transactions. This cannot be in keeping with the intent of the Legislature, which conditioned the power of spouses to transact with each other on their compliance with the fiduciary standard. (See former Civ. Code, § 5103, [Fam. Code, § 721].] ... '[W]henever an interspousal transaction is challenged, it should be analyzed under the same statute which gives spouses the conditional authority to transact with each other ....' [Citation.] Application of [Evidence Code] section 662 would preclude this; in effect it would abrogate the protections afforded to married persons under former Civil Code section 5103, subdivision (b) (Fam. Code, § 721, subd. (b)).

"Finally, we note that where two presumptions are in conflict, the more specific presumption will control over the more general one. [Citation.] In *McKay v. McKay* (1921) 184 Cal. 742, 746–747 [195 P. 385], the Supreme Court held the specific presumption that any advantage obtained by a husband from a wife was without consideration and under undue influence 'must, in the absence of any rebutting evidence, prevail over' the more general assumption that money paid by one to another was due to the latter." (*Haines, supra,* 33 Cal.App.4th at p. 301.)

*supra,* 33 Cal.App.4th at p. 301.) Interspousal transactions must be governed by the fiduciary standards established in section 721, and the presumption established by that provision governs when it is in conflict with section 2581. (*Haines,* at pp. 293–302.)

Appellant Wife attempts to distinguish *Haines* from this case on its facts. In *Haines,* the husband had in 1983 deeded his separate property to himself and his wife as joint tenants. In 1987, the wife executed a quitclaim deed conveying her joint interest in the property back to the husband, making it once again his separate property. The wife testified that she did so under considerable emotional and physical duress; the husband disputed this, instead characterizing the transaction as "calm and businesslike." (*Haines, supra,* 33 Cal.App.4th at pp. 283–285.) In 1988, during a period of reconciliation the husband reconveyed his separate property interest in the property to himself and his wife as joint tenants. After the parties ultimately separated in 1989, the wife filed for dissolution. In the division of property, the trial court awarded the husband reimbursement for the full value of the property at the time of the second transmutation to joint property, as his separate property contribution to the community. (*Id.* at pp. 285–286.)

Concluding that the presumption of undue influence trumped the conflicting presumption of record title and that the husband had failed to rebut the wife's claim of duress in the 1987 transaction, the appellate court reversed the trial court's reimbursement of the husband's separate property interest. " '[W]henever an interspousal transaction is challenged, it should be analyzed under the same statute which gives spouses the conditional authority to transact with each other ....' [Citation.] [¶] ... [¶] We conclude that application of [Evidence Code] section 662 is improper when it is in conflict with the presumption of undue influence that emanates from [section 721]. Any other result would abrogate the protections afforded to married persons and denigrate the public policy of the state that seeks to promote and protect the vital institution of marriage." (*Haines, supra,* 33 Cal.App.4th at pp. 301–302.)

Although the facts of *Haines* do differ from those before us here, the reasoning supporting the applicability of section 721 is the same in both cases. The rationale of *Haines* clearly applies to *any* interspousal property transaction where evidence is offered that one spouse has been disadvantaged by the other. Nothing in *Haines* would confine its holding to situations in which the interspousal property conveyance was from joint tenancy to separate property. Where there is undue influence, as much injustice may be effected by the reverse transaction.

We conclude that the trial court properly determined that the presumption of undue influence applies to the facts of this case. Consequently, it was

Wife's burden to establish that Husband's transmutation of the Property to joint tenancy was freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effect of a transfer from his unencumbered separate property interest to a joint interest as Husband and Wife. (*Haines, supra,* 33 Cal.App.4th at p. 296.) Substantial evidence in the record supports the trial court's conclusion that Wife failed to bear her burden of establishing this. This evidence showed that Husband suffered cognitive impairments and as a consequence had entrusted all marital financial and legal matters to Wife, trusting and relying upon her judgment and management in this regard. Wife, on the other hand, had extensive experience in legal and financial matters, and had personal experience in her previous marriage with the transmutation of separate property to joint tenancy. Husband signed the documents conveying his unencumbered separate interest in the Property to himself and Wife jointly without questioning her instruction that it was necessary to do so. On this record, we have no basis for overturning the trial court's determination that Wife had failed to rebut the presumption of undue influence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 611–614 [122 Cal.Rptr. 79, 536 P.2d 479].)

DISPOSITION

The judgment is affirmed.

Corrigan, J., and Pollak, J., concurred.