Filed 4/18/22 Estate of Spencer CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Estate of LELAND STANLEY SPENCER, Deceased. | 2d Civil No. B310065<br>(Super. Ct. No. 56-2017-00495573-PR-PL-OXN)<br>(Ventura County) |
| MARTHA A. SPENCER,<br><br>Petitioner and Respondent,<br><br>v.<br><br>LISA ANN SPENCER,<br><br>Objector and Appellant. | |

Appellant Lisa Ann Spencer is the daughter of Leland Stanley Spencer (decedent), who died intestate. She appeals from an order characterizing assets in which decedent or his surviving spouse, respondent Martha A. Spencer (wife), had an

ownership interest.[1] Appellant contends that the trial court erroneously granted wife's motion for summary adjudication. The motion sought to characterize two residential properties as wife's separate property. In addition, appellant claims that the probate court abused its discretion in bifurcating the characterization issue from other pertinent issues. We affirm.

*Factual and Procedural Background*

Wife married decedent in 1990. Decedent had three adult children from a prior marriage. He died in September 2016. Wife was appointed administrator of his estate.

In September 2018 wife filed a petition to terminate the probate proceedings and discharge the administrator because "there is no property subject to administration." The petition listed various assets in which decedent or wife had an ownership interest. Wife claimed that the listed "property is not subject to administration because it is the separate property of [wife] or . . . community property which passes to [wife] as the surviving spouse of [decedent]." (See Prob. Code, § 6401, subd. (a) ["As to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent"].)

Appellant objected that the assets listed in wife's petition "are directly traceable to [decedent's] separate property." Appellant argued that wife had failed to show that decedent "transmuted his separate property to either their community property or to [wife's] separate property." Therefore, "ALL property currently held and controlled by [wife] is . . . subject to administration."

---

[1] The order is appealable. (Prob. Code, §§ 1300, subd. (k), 850, subds. (a)(2)(C) & (D), 1303, subds. (f) & (h).)

Appellant filed her own petition requesting that wife be directed to transfer to decedent's estate specified properties held in wife's name as her separate property. Appellant alleged that wife had "violated her fiduciary duties to [decedent] by taking title to property acquired during the marriage as her sole and separate property." Appellant filed an additional petition requesting that wife be directed to prepare "an account and an inventory and appraisal of the administration" of decedent's estate.

The probate court "assign[ed] [wife's] Petition for trial on the issue of characterization of assets . . . to Judge O'Neill in Department 41 [of the Civil Department], and abat[ed] all petitions other than [wife's] Petition pending resolution of the matter of characterization of assets." The probate court said to the parties, "'He [Judge O'Neill] has this file until you're done with trial on the characterization issue. And at that point, if you want to continue with him to do whatever, that's great. If not, come back here and we'll figure things out. [] Once we have the characterization ironed out a lot of things will follow.'"

In Department 41 wife moved for summary adjudication as to two residential properties – one in Westlake Village and the other in Palm Desert, hereafter collectively referred to as "the properties." The motion was made "on the ground that there is no triable issue of material fact . . . and [wife] is entitled to judgment . . . determining these assets to be her sole and separate property." Wife alleged: "The Westlake Property was the family home where [decedent] and [wife] resided from 2003 until [decedent's] death in 2016, and where [wife] continues to reside to this day." "The Palm Desert Property was a second

home that [decedent] and [wife] enjoyed together from 2007 until his death in 2016."

The trial court granted wife's motion for summary adjudication. As to the remaining assets, a court trial was conducted concerning their characterization. The court found all of the remaining assets to be community property. The court explained its decision in a detailed, 29-page statement of decision. It noted, "The object of this trial was not summary resolution and closure of [decedent's] Estate, but a limited determination of the characterization of specific assets as identified in [wife's] petition." The statement of decision concluded with the following paragraph: "This is the final decision and order of the superior court adjudicating the characterization of assets identified above. There being no remaining assets or issues that the Civil Department was tasked to determine, the case is hereby remanded to the Probate Department for further proceedings consistent with this final decision."

*Summary Adjudication*

Appellant contends that the trial court erroneously granted wife's motion for summary adjudication of her claim that the properties are her separate property. "[S]ummary adjudication of an issue under Code of Civil Procedure section 437c is a judicial determination that the issue is not subject to further controversy in the action and is deemed established at the most critical stage of the action, the trial. Summary adjudication of issues has the same evidentiary effect as a summary judgment except that it does not determine all the material issues in the action and thus precipitate entry of judgment." (*Abadjian v. Superior Court* (1985) 168 Cal.App.3d 363, 370.)

"A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo." (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819.) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th, 826, 850, fn. omitted (*Aguilar*).)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) The moving party also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id*. at p. 851.) Unlike the burden of production, the burden of persuasion never shifts; the burden always rests on the moving party. (*Id*. at pp. 850-851.)

Wife produced evidence from which it may reasonably be inferred that the properties were her separate property. The grantors of the properties expressly conveyed them to wife as her

separate property. Decedent quitclaimed his interest in the properties to wife as her separate property.

Appellant argues that, because the properties were acquired during wife's marriage to decedent, "the community property presumption controlled." The presumption is set forth in Family Code section 760, which provides, "Except as otherwise provided by statute, all property . . . acquired by a married person during the marriage while domiciled in this state is community property."[2]

Wife concedes that "because the [properties] were acquired during [decedent] and [wife's] marriage . . . , the properties are presumed to be community property." But the deeds by which decedent quitclaimed his interest in the properties to wife as her separate property rebutted the community property presumption. (See *In re Marriage of Stoner* (1983) 147 Cal.App.3d 858, 864 [community property "presumption was, of course, rebutted by the quitclaim deed executed by husband and the community obtained no interest"].) Appellant acknowledges that wife "presented Quitclaim Deeds signed by [decedent] for both properties, giving up all of his interest to Respondent as her separate property."

Moreover, the community property presumption of section 760 is trumped by the "well-established default rule that form of title controls at death . . . ." (*In re Brace* (2020) 9 Cal.5th 903, 934; see *id*. at p. 932 ["the form of title controls the disposition of joint tenancy property at death"]; *Estate of Wall* (2021) 68 Cal.App.5th 168, 175 [in action concerning the characterization of decedent's real property, "the probate court erred in determining

---

[2] Unless otherwise stated, all statutory references are to the Family Code.

Family Code section 760 prevailed over [the form of title presumption of] Evidence Code section 662," which provides, "The owner of the legal title to property is presumed to be the owner of the full beneficial title"].) "In 1994, the Legislature amended Family Code section 2040 to specify that when one party files for divorce, 'the summons shall contain the following notice: "WARNING: . . . If either party to this action should die before the jointly held community property is divided, the language of how title is held in the deed . . . will be controlling and not the community property presumption."' (. . . Fam. Code, § 2040, subd. (c).)" (*In re Brace*, *supra*, at p. 932.)

Irrespective of the applicability of the community property presumption of section 760, appellant argues that wife failed to carry her burden of persuasion because of the application of the undue influence presumption of section 721. Section 721, subdivision (b) provides in relevant part: "[I]n transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."

Based on section 721, "if an interspousal transaction results in one spouse obtaining an advantage over the other, a rebuttable presumption of undue influence will attach to the transaction." (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 343-344.) "[Decedent] and [w]ife entered into . . . interspousal transaction[s] [when decedent] sign[ed] . . . quitclaim deed[s] permitting the [properties] to be acquired in [wife's] name only. Through [these] transaction[s], the

[properties were] acquired as [wife's] separate property. [Wife] received an advantage or benefit from [decedent's] execution of the quitclaim deed[s] when the [properties] became [her] separate property. [Thus], the statutory presumption of section 721 . . . appl[ies] to the instant case." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 629.)

The undue influence presumption of section 721 prevails over the form of title presumption of Evidence Code section 662. (*In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 998; *In re Marriage of Fossum*, *supra*, 192 Cal.App.4th at p. 345 ["the form of title presumption simply does not apply in cases in which it conflicts with the presumption that one spouse has exerted undue influence over the other"].) The undue influence presumption can trump the "default rule that form of title controls at death . . . ." (*In re Brace*, *supra*, 9 Cal.5th at p. 934.) In *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1353, the appellate court concluded that the probate court should have applied the undue influence presumption "to the transmutation of decedent's separate property to community property . . . ."

"'"When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action 'was freely and voluntarily made, with a full knowledge of all the facts, and with a complete understanding of the effect of' the transaction." [Citation.]' [Citation.] The advantaged spouse must show, by a preponderance of evidence, that his or her advantage was not gained in violation of the fiduciary relationship." (*In re Marriage of Fossum*, *supra*, 192 Cal.App.4th at p. 344.)

In her motion for summary adjudication, wife addressed the undue influence presumption. Her declaration in support of

the motion referred only to the language of the quitclaim deeds and to decedent's 2012 email to a business partner. In the email decedent said, "ALL the money is [wife's] own sole and separate property. This includes the . . . homes . . . . I own nothing." Wife did not describe the circumstances underlying decedent's decision to sign the quitclaim deeds.[3]

We need not determine whether wife rebutted the undue influence presumption. If wife did not rebut it, the granting of the motion for summary adjudication was harmless error. Code of Civil Procedure section 475 provides: "No judgment, decision, or decree shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (See also Cal.Const., art. VI, § 13.) "[T]he burden to demonstrate prejudice is on the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528.)

---

[3] In her appellate brief, wife also relies on the quitclaim deeds and the 2012 email: "[T]he record establishes that [decedent] knowingly and voluntarily participated in and expressly consented to [wife] acquiring the Properties as her sole and separate property. [Decedent] signed and notarized [quitclaim] deeds stating his intent and purpose was to confirm the Properties as the sole and separate property of [wife]. Years later, [decedent] also confided to a business partner that the properties were [wife's] sole and separate property. [Appellant's] brief points to nothing in the record to suggest otherwise."

"[F]acts found by the trial court following trial may be relevant to the question whether error in a pretrial ruling was prejudicial so as to warrant reversal of the judgment." (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1742, fn. 19.) After granting wife's motion for summary adjudication, the trial court conducted a seven-day trial on the characterization of decedent's remaining assets. One of the issues litigated was appellant's claim "that the community property presumption should not apply to [the remaining] assets that [decedent] and [wife] acquired during the marriage because [wife] 'unduly influenced' [decedent] in connection with their acquisition, in breach of her fiduciary duties under Family Code section 721." In its statement of decision, the trial court rejected appellant's claim of undue influence. It found: "The evidence at trial was insufficient to demonstrate that [wife] obtained any unfair advantage over [decedent], or abused [decedent's] trust and confidence in her, or engaged in excessive persuasion overcoming [decedent's] free will, or engaged in a transaction involving the community property without [decedent's] consent. The evidence showed the opposite. [Decedent] was a law school graduate and a sophisticated and intelligent businessman and investor. [Decedent] was described at trial as the 'mastermind' and the 'driving force' behind his and [wife's] business and investment arrangements over the years. . . . Every witness who testified at trial . . . attested that [decedent] . . . generally directed the transactions in which they were engaged. . . . The ownership records for various properties and businesses were titled in [wife's] name because [decedent] instructed that they be written that way. . . . [Appellant and her sister] both testified at trial that they did *not* believe any of the assets at issue were purchased without [decedent's] consent, or

that [wife] persuaded, encouraged, pressured, induced, or otherwise 'influenced' him to enter the transactions resulting in their acquisition. [¶] . . . [T]he court finds, as a matter of fact, that [wife] did not engage in any transaction or take any action without [decedent's] knowledge or consent, did not make improper use of the confidence [decedent] reposed in her, did not exert such persuasion on [decedent] as to overcome his free will, and otherwise did not unduly influence [decedent] in any way."

The court's findings after trial demonstrate that, had the motion for summary adjudication been denied and the undue influence issue concerning the properties been tried, the court would have found that wife had rebutted the undue influence presumption of section 721. Therefore, if wife failed to rebut the undue influence presumption in her motion for summary adjudication, the erroneous granting of the motion did not prejudice appellant.

Furthermore, the granting of the motion for summary adjudication was not prejudicial irrespective of the court's findings after trial. Appellant maintains that, pursuant to the community property presumption of section 760, the trial court should have found the properties to be community property because they were acquired during the marriage. But if the trial court had so found, decedent's community property share would have passed to wife under the law of intestate succession. (Prob. Code, § 6401, subd. (a); *In re Brace*, *supra*, 9 Cal.5th at p. 917 ["In the absence of a will, . . . the decedent's share of the community property passes through intestacy to the surviving spouse"].) Thus, the result would have been the same irrespective of whether the properties were characterized as community property or wife's separate property.

*Bifurcation*

Appellant claims that "the [probate] Court erred in bifurcating the issue of characterization of assets" from other issues presented by appellant's petitions. "Only by litigating all issues jointly could Appellant present a full and accurate picture of the extent of Decedent's estate and assets. Appellant was deprived of her right to present her claims and evidence in the most efficient and persuasive manner."

The standard of review is abuse of discretion. "It is within the discretion of the court to bifurcate issues or order separate trials of actions, . . . and to determine the order in which those issues are to be decided." (*Royal Surplus Lines Ins. Co., Inc. v. Ranger Ins. Co.* (2002) 100 Cal.App.4th 193, 205.)

Appellant has failed to provide an adequate record of the proceedings concerning the probate court's order bifurcating the issues. According to the statement of decision, the order was made "[a]fter hearing the argument of counsel" on April 18, 2019. The statement of decision quotes excerpts from the reporter's transcript of the hearing. But the reporter's transcript is not included in the record on appeal.

"'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. [Citation.]'" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) "The absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion. [Citations.] As the party challenging a discretionary ruling, [appellant] had an affirmative obligation to provide an adequate record so that we could assess whether the

court abused its discretion. [Citations.] Accordingly, she has forfeited this argument on appeal." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.)

Respondent claims that appellant "never objected [to] or challenged the bifurcation order." Without a reporter's transcript of the hearing, we cannot verify respondent's claim. If appellant failed to object, she forfeited the bifurcation issue. (*Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1117.)

Finally, appellant has failed to show that the bifurcation order prejudiced her. "'To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [her] would have been reached."'" (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 903.) Appellant does not explain how, in the absence of bifurcation, a result more favorable to her would have been reached on the characterization of the assets listed in wife's petition.

*Disposition*

The order appealed from, i.e., the order characterizing the assets listed in wife's petition, is affirmed. Wife shall recover her costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Vincent J. O'Neill, Jr., Judge[*]

Superior Court County of Ventura

---

Pastor Law Group, Nathan D. Pastor and Christina P. Tanti, for Objector and Appellant.

Ferguson Case Orr Paterson, David B. Shea and Joshua S. Hopstone, for Petitioner and Respondent.

---

[*] Retired Judge of the Ventura Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)